Good morning, your honors. Michael Crowley on behalf of Lawson Hardwick. And I'm here to tell you about a case that ended up in a great deal of evidence being admitted under the guise of 404B, but was really intended to be character witness and was propensity evidence. Adding to that problem, there was no limiting instruction that was given at the time that all of this evidence came in. And the 404B evidence, albeit in a very short trial, rivaled in time the amount of evidence that was as to the two counts that were actually in the indictment. And so we're going to ask you one question. You said there was no contemporaneous instruction given. Correct. Isn't it correct that the district court informed the counsel that if they wanted a contemporaneous limiting instruction, they should ask for it? That was during the motions in limine. There was a statement to that effect, yes. There was no affirmative statement saying, are you not asking for it? And we know from case law and from experience that whenever limiting, whenever evidence is coming in that does not directly relevant, that the court should, on its own, explain to the jury that this is offered for something different than the direct relevance of the indictment. Well, the district court, ruling on the 404B evidence, said I'm going to let this in. I'm limiting it, how it's coming in, because I'm not letting the images come in, these other images, just reference to them, because knowledge was at issue. Do you dispute that knowledge was at issue here? Well, that's an interesting point, because yes or no, and then I'm going to finish this. Yes. Yes, it was. All right. So knowledge was at issue. And then so the district court made its determination and then said to the defense attorney, let me know during the trial if you want me to give a limiting instruction. It seems that there's reasons for that, why the district court would have done that. Sometimes the judges do go ahead and automatically give the limiting instruction. Sometimes defense counsel don't want those limiting instructions, because it just reminds the jury. I mean, there's strategic reasons for giving or not giving those limiting instructions. So I just want to make sure I understand why you think it was error and abuse of this Court's discretion or is this plain error review we're doing on this or is it abuse of discretion? It was not. It's abuse of discretion is the standard. How was that abuse of discretion by the trial court? I understand what the Court's saying, and I understand the troubling part of that. I think if the Court had ascertained that this was a strategic reason for not doing that, that would be one thing. But in examining the whole record, when you see that this comment was made, not at the beginning of trial, about that, but at motions and limiting, whatever, at a different date, and she says, remind me, basically, is the essence of what the Court is saying. The quote is something along the lines that I looked at it just before. I think it was either tell me or remind me. Tell me. Okay. But I don't think that that rises to the standard of when this much limiting What case law do you have to support your position? I wish I had some because we looked at it. But we did look and look and look for that. In other words, does a judge have a sui sponte duty to do that or to ascertain that the defense does not want it? But I want to add one other point on the limiting because I think that there is an issue here, an important issue, about it not being limited. The reason that it was so prejudicial was the titles of these files that went on and on forever with, quite frankly, very graphic, very disgusting words. What we can tell from the record is that that was put up on the big screen. There were four, a total of seven pages in two different exhibits where those were flashed up to the jury to allow them to take in, if you will, all these file names that go on and on and on. And I'm not going to repeat any of them. They are in the record. But that's what made it so prejudicial and really begged for a limiting instruction that this does not go to that he's a bad person, that he's acting the same way that for what he's charged with, acting in the same way that a person would that have all these files on their computers. And that's where the danger, where the jury looks up there and they see those kinds of words up there and just automatically say, this is a bad person. This is bad character. So he must be guilty of what the government says. And I can only base it on my experience because there is no direct case law that says that a judge, at least in federal court, has a sui sponsi duty to give a limiting instruction. It's actually stronger in California state law to do that. But this really begged it for it. And then we have this orphan instruction that's given at the end, a sort of limiting instruction that talks about other acts. Other acts was never defined. They would have no way of knowing what that instruction was talking about. Don't recall did the defense attorney object to that instruction? He did not. Okay. All right. I agree. The defense attorney didn't object to it. It looks like it's very, it's not exact to the model instruction, but it looks like it's It is. I think it is. I think it is direct to the model instruction. But I call it an orphan because the reason that it's a model instruction, given the way it is, is because other acts have been defined. And typically there's been a limiting instruction at the time that it came into evidence. Again, I mean, if the judge on its own goes into other acts, then, again, that could be used later to say it shouldn't have gone into the description of other acts, if that's what you're saying. But the defense attorney didn't speak up. It seems like they should have, and there may have been a strategic reason why they didn't. I understand that aspect of it. But I would still say that if there's not a rule on it, there should be. And I think it's just common due process fair trial rights to say when this much evidence that is so prejudicial is coming in as other act evidence, that needs to be told to the jury that that is not that they consider this person, the character of this person, in deciding whether or not he committed the acts that are in the indictment. So I would save the remainder of my time for any rebuttal. Thank you. Good morning. I'm Kyle Hoffman for the United States. I'll start with just the standard 404B analysis. This other act evidence, the other file names, so to speak, was clearly relevant on the theory that it disproved that this downloading of these things was an accident. And recall that from the very beginning, Mr. Hardrick said, I would download certain files, they would say they were titled one thing, and then they would be something else. Well, Mr. Cowley points out that the file names that we're talking about here, both the charged counts and the uncharged file names, there's no doubt at all about what those files are about. So that clearly was very relevant to rebutting Mr. Hardrick's claim at the very outset that this was an accident. Clearly a permissible 404B purpose. There was also the claim during trial, which was a little bit different, that a hacker had gotten into Mr. Hardrick's computer and he was, the other hacker was responsible for this. Well, these other files, and in particular there was one that appeared in two different computers and two different file spaces, there was testimony that I've never seen, expert on that. So it's clearly relevant on that angle as well. Now, then we go to, okay, it's clearly admissible for 404B purposes. It was used for 404B purposes. The argument of counsel, and I'll just point the court to the excerpts of record at 84 and 85, the word accident appears four times in those two pages, and it's discussing why those other evidence about other images is relevant. It's because it shows it's not an accident. So it's clearly not used for character purposes. It's used for proper 404B purposes. So I'm trying to go down the chain of logic here for why it's okay. Then 403. It's not the images. Never intended to offer the other images to overly prejudice the jury. All it was was the list of the file names. Now, to get to the point about the duty, perhaps, to sua sponte, instruct the jury, and I would disagree with Mr. Crowley on that. There is no such duty. Well, but there is a Ninth Circuit instruction, and the Ninth Circuit instructions that were given do suggest that the court instruct the jury before hearing the evidence about the 404B. I'll say a few words about that, if I could, Your Honor. First, as we've discussed, the district court did say, when it comes up, tell me, and I will instruct. I disagree with Mr. Crowley about when that occurred. It actually, my reading of it is it was right during the first witness of the trial. So it's on the spot. He's reminded. It's also true that, I mean, there wasn't a contemporaneous limiting instruction, but there was a limiting instruction in the general instructions. And that was combined with, you know, he's only on trial for two, these two images. The other evidence is only relevant for other purposes. When you say in the general instructions, do you mean in the preliminary instructions or in the ending instructions? The ending instructions. Okay. And I will also mention that not only did the district court ask, if you want a contemporaneous limiting instruction, please tell me, but she also asked in the general final instructions conference, if you want some additional instructions. She didn't say specifically about 404B, but if you want some additional instructions, tell me. And there was nothing further. So at every point, she asked. Now, getting to the further down the chain of logic, is there a duty for the district court to sua sponte, give a contemporaneous limiting instruction? And I will confess that the parties, and I include me, obviously, didn't go that far down the chain of logic and look into that question, but I did before the argument. And I will point the court to Wright and Miller, Federal Practice and Procedure, Section 5249. It's page 366 of the current edition. There is no such sua sponte duty to give a contemporaneous limiting instruction. Why? Because counsel oftentimes don't want it. Because it will only, and we've just heard arguments in the previous case about a judge doing something wrong, trying to cure something. If the judge in this instance had said, I'm going to interject myself, I'm going to give an instruction at the time about how to treat this evidence, I would submit we'd probably be hearing that that was error, that the judge muffed it or messed it up. So there are very good strategic reasons and legal reasons why the judge would say, if you want it, ask for it. But if you don't ask for it, I'm going to assume you're doing it for good strategic reasons. And in this case, there would be good strategic reasons. Why would you want to emphasize this evidence? Why would you want to call the jury's attention to it any further? I would suggest perfectly understandable why a defense counsel would not do so. So I don't want to belabor the point, but if the court has any further questions, I'd be happy to try to answer them. I didn't want to, Mr. Hoffman. I really am. I see you're a graduate of Boalt. Was I teaching there? Did you have any thought in the brain? Your Honor, I believe you were. I know. I remember you cast a long shadow at Boalt Hall. But you weren't paying for it. I'm sorry? You didn't take one of my books. I did not, Your Honor. I did with Judge Fletcher. Yeah. You know, this is kind of a one-way and easy case, but the prosecution of these offenses is a little bit troubling. The real criminals are the people who produce those drugs. And then the way of trying to get at that is prosecution of the consumer. And that's a dubious move. The producers are not bothered if the consumers are prosecuted. And I don't think we know how many consumers there are. Did you have any statistics on how common the crime is? Your Honor, I do not. I don't ordinarily prosecute these cases. I understand the Court's concern about these cases carry very severe penalties. But one thing we should remember in this particular case is that the defendant had pled guilty to a lesser charge early on, and it was his choice to withdraw that guilty plea and roll the dice on a more serious charge. So that doesn't directly answer Your Honor's question, but I certainly understand Your Honor's concern. His lawyer might be criticized for not telling him what he was risking. And I just read a long article on this. You may be familiar with it, but I'll mention it because it's worth looking at. It's by Melissa Hamilton. It stands for Law and Policy Review, Volume 22. The efficacy of severe child pornography sentencing. Empirical validity or political rhetoric. And it seems to satisfy some people in Congress to enact these very stiff penalties. But we don't know how much of a problem they're dealing with or how effective these penalties are. And there's certainly, if you look at this article, there's a tremendous disparity in the sentencing. It really ranges from almost no time to the guideline sentences. And that's very disturbing that there should be such a range of punishment depending on the judge who's involved. So I know you're coming to it for the first time. I'm coming to it for the first time. And all I can say is that it does not seem to be in need of some substantial reform. Your Honor, I personally can't disagree with you. I do know that the assistants who prosecute these cases, who have more intimate familiarity with actually what we're talking about, the images and so on, disagree with us vehemently because they think that it's so horrible. I mean, that's just the other side of the coin. Let me ask you a question once we're off the basic case. Had he not withdrawn his plea, what would his sentence have been, Your Honor? You're asking me a question. I don't know that there was a statutory minimum involved if it's just possession. I don't know whether there is or there isn't. I think there isn't, but I'm not positive about that. In other words, and I'll go back and check, but he certainly would have been eligible, so to speak, for a much lesser sentence than the sentence he ultimately got. It was governed by mandatory minimums. Did he have a record before? No. No. And, in fact, Your Honor, he had formerly been, I can't remember what agency, but he had been a director at the Port of Entry in Calexico, so he had been part of the federal government. I'm not going to stand here and say that this is – I think it's sad. It's a very sad case. But was it a fair trial? Did the judge do the right thing? Yes. And ultimately, did Mr. Hardrick make a very bad decision to go to trial on the receipt counts? Emphatically, yes. He may have gotten a much lesser sentence if he had chosen otherwise. He got 10 years. How old is he? I believe he's in his 60s, but I'm not positive about that. Yeah. As I said, this is not really part of the case, Judge Noonan's questions or mine, and they have, unfortunately, can have no effect on the outcome. But it is. I'll try to answer the Court's questions, and thank you for your time. Thank you. I can answer some of your questions and also Judge Noonan's questions. He is 63 years old. He is suffering from cancer, among other ailments. He was in a wheelchair during the trial. The government's recommendation at the original sentencing was for 57 months. And my experience, because I do have to defend on these cases on a regular basis, is that Judge Huff would have departed down from the government's recommendation. At least that's been my experience with her. Just yesterday on a somewhat similar matter, but a success story where she did depart down and he did, and now he's doing fine because oftentimes these are isolated-type incidents. And as to one other point, Your Honor, in our reply brief on page 2, we do cite the case law that I think highly recommends. It doesn't rise to the level, with all due respect to Wright Miller, of it being a sui sponte duty, but it implores what we know is common sense as trial lawyers all the time is that unless the defense has a specific strategic reason not to do that, and sometimes that is true, that there's a reason not to highlight it. But in this case, as I said, there was so much evidence that came under 404B, almost as much as to the indictment. And when the government says these titles that it was done in a limited way because the images weren't shown, but at the same time says that the government that those titles are self-evident of what they're all about, that's what was so prejudicial. That's what affected the jury in such a profound way, and I believe, at least in part, if not in whole, caused the disconviction. Thank you, counsel. Thank you, Your Honor. Next case is U.S. v. Jackson.
judges: REINHARDT, NOONAN, MURGUIA